HEARD NOVEMBER TERM, 1877.

STATE, *ex rel.* WISE, *vs.* RANSOM.

A warrant drawn on the County Treasurer, under the Act of 19th March, 1874, ? 84, to defray the expenses of making assessments for taxation is payable "from the first collection of County funds" of the fiscal year for which the assessments were made, and not of the fiscal year in which they were made.

The Act of 19th March, 1874, ? 84, is not repealed, either expressly or by implication, either by the Act of 7th June, 1877, to reduce and fix the salaries of certain officers, or by the Act of 9th June, 1877, to raise supplies and make appropriations for the fiscal year commencing November 1st, 1876.

January 28, 1878. The opinion of the Court was delivered by

McIVER, A. J. This was an application for a *mandamus* to compel the respondent, as Treasurer of Aiken County, to pay a warrant drawn by the County Commissioners of Aiken against the regular tax "to pay the expenses of making assessments for taxation" incurred between the 1st of June and 1st of October, 1876.

The return of the respondent denies that "he has any funds in his hands that are applicable in payment of the check [warrant] in question."

It is admitted, however, that the respondent reported to the County Commissioners on the 15th of August, 1877, "that he had on hand, subject to their draft for the present fiscal year, $3,955.96 for County purposes only, and $1,319.20 for back indebtedness of the County," and that on the next day the warrant in question was drawn.    The only question which is raised in this case and which we are called upon to determine is whether the claim in question is payable out of the taxes levied for the fiscal year beginning 1st November, 1876, represented in this case by the fund of $3,955.96, or out of the taxes levied for back indebtedness, represented by the fund of $1,319.20.

The legislation upon this subject is apparently confused and conflicting; but we think it may be, and should be, so read as to avoid this apparent conflict and bring the several Acts relating to this subject into harmony.    The several statutes to which we have referred as regulating this matter are as follows:    The Act of 19th March, 1874, § 84, 15 Stat., 762; the Act of 25th March, 1876, § 3, 16 Stat., 194; the Act of 7th June, 1877, § 3, 16 Stat., 248, and the Act of 9th June, 1877, § 2, 16 Stat., 287.    Inasmuch, however, as the services upon which this claim is based were rendered between the 1st of June and the 1st of October, 1876, and the Act of 25th March, 1876, by its express terms was not to take effect until the 1st of November, 1876, we do not think its provisions apply to the present case.    The Act of 19th March, 1874, the only law in force at the time this claim was incurred, provides that the County Auditor shall keep his office open from the 1st of July to the 20th of August in each year for the purpose of receiving returns and making assessments, as a basis for the collection of taxes, for the fiscal year beginning 1st November following, and in Section 84 declares as follows:    "That the Treasurer of each of these above Counties shall pay to his County Auditor, or his order, the sum specified in the Auditor's warrant from the first collection of County funds of *that fiscal year.*"

Without stopping to inquire how it is that the claim in question is not represented by the *Auditor's* warrant rather than by the warrant of the County Commissioners, as no question on this subject is raised by the County Treasurer, the important inquiry which arises

out of the language of the Act above quoted is: what fiscal year is designated by the terms "of *that* fiscal year?" What does the word *that* refer to? Does it refer to the fiscal year in which the services were rendered, or does it refer to the fiscal year *for which* the services were rendered? We think that a proper construction of these words, viewed in the light of the context, requires us to regard these words as referring to the fiscal year *for which* the services were rendered. The other provisions of the Act were manifestly designed to put into operation and regulate the machinery by which the taxes for the fiscal year commencing on the 1st of November following the period in which the services were rendered were to be collected; and when the Act declares that those services are to be paid for out of the collections of *that* fiscal year, the natural and necessary inference is that the Legislature intended to designate by the word "that" the fiscal year of which they had been previously speaking, viz., the year commencing 1st November following the period when such services were rendered.

Again, the language of the Act is that these services are to be paid for out of the *first* collection of that fiscal year. Now, as we have seen, these services are to be rendered near the close of the fiscal year, and in view of the general provisions of the law fixing the time for collecting the taxes it is very obvious that these services could not be paid for out of the *first* collections if the words in question are to be construed as designating the fiscal year in which the services were rendered, because the claim would not accrue until long after the time fixed for the collection of the taxes. It is argued, however, that, conceding this construction of the Act of 19th March, 1874, to be correct, it is still not conclusive of the question, as that Act has, if not expressly, at least by implication, been repealed by the Act of 7th June, 1877, and by the Act of 9th June, 1877. The former is an Act to reduce and fix the salaries of certain officers, and, after fixing the salary of County Auditors, provides that the expenses of the assessments, not exceeding certain fixed sums, shall be paid from the first collections of County funds of the fiscal year *in which* the work shall be performed, and the fifth Section repeals all Acts and parts of Acts inconsistent with this Act.

It will scarcely do to say that this Act operates upon the claim now in question, which arose under previous legislation in pursuance of which the services had been performed before the passage

of this Act, and was also audited and allowed before that time, the account having been approved by the Board of County Commissioners on 16th January, 1877, though the warrant was not drawn until the 16th August, 1877. It had, therefore, become an established claim before the Act claimed to be a repealing Act was passed. The objection to the construction contended for by respondent would be not merely that this was retroactive legislation, but there would be a conflict as to the amount; for by law, as it stood when the services were performed, the amount was limited to eight hundred dollars, while by the Act of 7th June, 1877, the amount is limited to four hundred dollars. It seems to us, therefore, that the provisions of the Act of 7th June, 1877, must be confined to cases arising since the passage of that Act.

It only remains for us to inquire what is the effect of the provisions of the Act of 9th June, 1877, upon the question which we are called upon to determine. This is "An Act to raise supplies and make appropriations for the fiscal year commencing 1st of November, 1876." By the terms of the second Section a tax of three mills is levied for County purposes generally for the fiscal year commencing 1st November, 1876, and an additional tax in the County of Aiken of one mill to pay the past indebtedness of said County for the years 1875 and 1876. Under the former or three mill tax, the fund of $3,955.96 has been collected, and under the latter, the one mill tax, the fund of $1,319.20 has been raised. The past indebtedness here provided for must necessarily be that arising during the years of 1875 and 1876, but prior to the 1st of November, 1876, because the indebtedness arising subsequent to that date is provided for by the general levy of three mills.

This construction is aided by reference to the public events, of which we may take judicial notice, which were before the mind of the Legislature at the time this Act was passed. It is a fact that no taxes were collected for the fiscal year commencing first November, 1876, by any legal authority, except such as were levied under the Act of 9th June, 1877; and it is equally true that the services which constitute the basis of the claim now in question were rendered long before the passage of this Act, for the purposes of another supposed levy. The Legislature, knowing these facts, may well be supposed to have intended by the use of the terms "past indebtedness of said County for the years of 1875 and 1876" to provide a special fund out of which such services could be paid, leaving the

general levy to meet the expenses charged against it, in express terms, by the Act of 9th June, 1877. Any other construction would lead to a conflict between the Act of 7th June, 1877, and the Act of 19th March, 1874; while by the construction which we adopt the provisions of these two Acts may be harmonized; for, if by the terms of the Act of 19th March, 1874, the relator is entitled to be paid out of the collections for the fiscal year beginning 1st November, 1876, he is by the same Act equally entitled to be paid from the *first* collections for such fiscal year, while, as we have seen by the terms of the Act of 7th June, 1877, the Auditor who made the assessments during the fiscal year of 1876–77 is likewise entitled to be paid from the first collections of the same year. This conflict may be, and doubtless was, intended to be avoided by making the latter payable out of the general levy for the fiscal year commencing 1st November, 1876, while the former is provided for by the special levy of one mill to pay past indebtedness. The force of the argument that the claim here in question cannot be classed as past indebtedness is not perceived. The obligation to pay arose when the services were rendered, and the amount and correctness of the claim was ascertained and fixed on 16th January, 1877, when the claim was approved by the County Commissioners, all of which was prior to the passage of the Act providing for the payment of past indebtedness.

We are likewise unable to see how this construction can be regarded as violating the obligation of contracts. The fund out of which it is claimed the warrant in question ought to be paid was raised by virtue of the provisions of the Act of 9th June, 1877, and surely the Legislature, while raising the fund, had a right at the same time to direct its application, especially when, at the same time and by the same Act, another fund is provided for the payment of claims of the class in which the one now in question stands. If, therefore, the warrant now in question had been drawn payable out of the fund provided for the payment of past indebtedness, we do not see how the Treasurer could have refused to pay it out of the fund which he then had on hand applicable to that purpose.

The motion is dismissed.

*Willard*, C. J., concurred.